THEODORE J. BOUTROUS JR., SBN 132099
    tboutrous@gibsondunn.com
ABBEY HUDSON, SBN 266885
    ahudson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

PETER S. MODLIN, SBN 151453
    pmodlin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:   415.393.8306

THOMAS A. MANAKIDES, SBN 229119
    tmanakides@gibsondunn.com
JOSEPH D. EDMONDS, SBN 297984
    jedmonds@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  949.451.3800
Facsimile:   949.451.4220

PETER E. SELEY, *pro hac vice application to be submitted*
    pseley@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:  202.955.8500
Facsimile:   202.467.0539

Attorneys for Defendant THE BOEING COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY KAST; MONIQUE QUIGLEY; ZEV KAST,<br><br>                    Plaintiffs,<br><br>          v.<br><br>SOUTHERN CALIFORNIA EDISON COMPANY; EDISON INTERNATIONAL; BOEING COMPANY; and DOES 1-100,<br><br>                    Defendants. | CASE NO. 2:19-cv-10091<br><br>**NOTICE OF REMOVAL BY DEFENDANT THE BOEING COMPANY**<br><br>[Removal from the Superior Court of the State of California, Los Angeles County, Case No. 19STCV41183] |

Gibson, Dunn &
Crutcher LLP

**TO THE CLERK OF THE ABOVE-TITLED COURT, AND TO PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant The Boeing Company[1] ("Boeing") removes this action—with reservation of all defenses and rights—from the Superior Court of the State of California for the County of Los Angeles, Case No. 19STCV41183, to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1442 and 42 U.S.C. § 2210(n)(2).

Plaintiffs sued Boeing in state court in connection with a wildfire that allegedly started on Boeing's property at the Santa Susana Field Lab (the "Site" or "SSFL"). The Site is a former research and development facility that for decades tested and developed rocket engines and conducted nuclear energy research.  Plaintiffs claim that "[t]he SSFL is contaminated with tons of radioactive and toxic chemical waste, created by decades of nuclear accidents and rocket testing" and that Boeing failed to properly "clean up the SFFL" and "allow[ed] the Woolsey Fire to ignite on their property, sending toxins into the air" which allegedly caused Plaintiffs' alleged harm. Declaration of Thomas A. Manakides Decl. Ex. A (Complaint) ¶¶ 66, 73, 72.

This Court has jurisdiction under 28 U.S.C. § 1442(a)(1) because Boeing and its predecessors, including North American Aviation, Atomics International, Rocketdyne, and Rockwell International (collectively referred to herein as "Boeing Predecessors" or "Predecessors"), were "acting under" an officer of the federal government when they performed the actions that form the basis of Plaintiffs' Complaint.  Officers at the United States Air Force ("Air Force"), the National Aeronautics and Space Administration ("NASA"), the Department of Energy ("DOE"), and other branches of the military closely controlled, supervised, and monitored the substances—including nuclear material and chemicals—that Boeing and its Predecessors used on the Site

---

[1]  While Plaintiffs' case caption erroneously refers to Boeing as "Boeing Company," the body of Plaintiffs' complaint correctly identifies Boeing as "The Boeing Company."  *See* Manakides Decl. Ex. A (Complaint) ¶ 2.

starting in the 1940s.  And more recently, NASA and DOE entered into contracts with Boeing through which they oversaw, supervised, and monitored Boeing's remediation of NASA's and DOE's contamination at the Site.  The federal government's extensive oversight, control, and monitoring give rise to a number of federal defenses, including the government contractor defense, federal preemption, and the Defense Production Act.  Thus, 28 U.S.C. § 1442 provides Boeing a federal forum to litigate these defenses, which "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)."  *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).

In addition, Plaintiffs' allegations of harm from radioactive contamination give rise to this Court's jurisdiction under the Price-Anderson Act, 42 U.S.C. § 2210(n)(2).

## I.    VENUE IS PROPER IN THIS COURT

1.     Venue is proper in this Court because it is the "the district court of the United States for the district and division embracing the place wherein [the action] is pending."  28 U.S.C. § 1442(a).  The United States District Court for the Central District of California, Western Division, is the federal judicial district and division embracing the Superior Court of the State of California, Los Angeles County, where this suit was originally filed.  28 U.S.C. § 84(c)(2).

## II.    TIMELINESS OF REMOVAL

2.     Plaintiffs filed their Complaint against Boeing and other defendants in the Superior Court for Los Angeles County, Case No. 19STCV41183, on November 15, 2019.  Manakides Decl. ¶ 2.  Plaintiffs have not served Boeing with the Complaint.  *Id*.

3.     This notice of removal is timely under 28 U.S.C. § 1446(b) because it is not filed more than 30 days after service.  28 U.S.C. § 1446(b); *City of Ann Arbor Employees Ret. Sys. v. Gecht*, No. C-06-7453EMC, 2007 WL 760568, at *9 (N.D. Cal. Mar. 9, 2007) ("Procedurally, [the defendant] could remove whether or not he had been 'served.'"); *Watanabe v. Lankford*, 684 F. Supp. 2d 1210, 1214 (D. Haw. 2010) ("A complaint need only be filed to be removable.") (collecting cases).

## III.   SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

4.      Plaintiffs allege that they suffered damages as a result of a 2018 wildfire called the "Woolsey fire." Plaintiffs allege[2] that "the Woolsey fire ignited on property known as the Santa Susana Field Laboratory." Manakides Decl. Ex. A (Complaint) ¶ 3. Plaintiffs also allege that the Woolsey Fire "ignited underneath high tension lines owned and operated by SCE during a predicted high wind event and was caused by the poor maintenance of the lines" and went on to burn the Plaintiffs' property and cause personal injury, emotional distress, and economic loss. *Id*. ¶ 3, 107.

5.      Among other things, Plaintiffs claim that the Site is "[a] former rocket engine test and nuclear research facility." *Id*. ¶ 58. As a result, Plaintiffs claim that "[t]he SSFL is contaminated with tons of radioactive and toxic chemical waste, created by decades of nuclear accidents and rocket testing." *Id*. ¶ 66. They allege that "[t]he nature of the toxic contamination within the SSFL requires" Boeing to "exercise an increased level of care in accordance with the increased risk of associated danger," *id*. ¶ 59, but that Boeing "fail[ed] to clean up the SSFL to the appropriate standard prior to the Woolsey Fire." *Id*. ¶ 73. They claim that Boeing attempted "to reduce the level of clean-up to a much weaker standard" which "will leave some of these toxicants in place, risking people's health long into the future." *Id*. ¶ 68. Plaintiffs further allege that "[b]y allowing the Woolsey Fire to ignite on their property" Boeing "sen[t] toxins into the air." *Id.* ¶ 72.

6.      Plaintiffs also assert that Boeing, in its "Emergency Readiness Assurance Plan . . . assumed responsibility to Plaintiffs to protect them from harm and damages suffered as a result of hazards on the SSFL, ensuring the United States government, and the public and authorities present in the areas surrounding the SSFL, that the SSFL was 'maintained at a level commensurate with the hazards' of that facility." *Id*. ¶ 71. Plaintiffs further claim that Boeing "did not maintain adequate fire prevention

---

[2] Boeing disputes Plaintiffs' allegations and intends to disprove them on the merits at the proper stage in these proceedings. Boeing's recitation of Plaintiffs' allegations in no way concedes their truth or validity.

resources and/or personnel at the SSFL commensurate with the high risks, despite claiming to the contrary" in the Emergency Readiness Assurance Plan. *Id*. ¶ 70.

7.　　Plaintiffs allege that Boeing "breached [its] duties owed to Plaintiffs by . . . (1) failing to comply with the applicable standards of care; (2) failing to take reasonable care to discover any unsafe conditions on their property; (3) failing to take action to rectify the dangerous and/or defective condition that existed in their property that created the fire hazard . . . and (7) failing to warn neighboring property owners of the dangers inherent in the conditions of their property." *Id*. ¶ 96.　As a result, Plaintiffs allege that they, among other things, have suffered "property damage, personal injury, emotional distress, and economic losses." *Id*. ¶ 107.

8.　　Plaintiffs' Complaint asserts ten causes of action: (1) "Negligence as to SCE,"　(2) "Negligence as to Boeing Defendants," (3) "Inverse Condemnation," (4) "Public Nuisance," (5) "Private Nuisance," (6) "Trespass," (7) Violation of *Public Utilities Code* § 2106," (8) "Violation of *Health and Safety Code* § 13007," (9) "Violation of *Health and Safety Code* § 13008," (10) "Premises Liability." *Id.* at 6. Plaintiffs seek to recover various categories of money damages as a result. *Id*. at 43–44.　Plaintiffs also request "an order directing the Boeing Defendants to abate nuisance." *Id*. at 44.

9.　　There are two separate and independent grounds for removal.　Boeing is authorized to remove this action under 28 U.S.C. § 1442(a)(1) because, assuming the truth of Plaintiffs' allegations, Boeing and its Predecessors were acting under federal officers, including the Air Force, NASA, and DOE, when they performed the actions that form the basis of Plaintiffs' Complaint and that give rise to a number of federal defenses.　In addition, Plaintiffs' allegations of nuclear contamination give rise to jurisdiction under 42 U.S.C. § 2210(n)(2).

## IV.   THIS COURT HAS FEDERAL OFFICER JURISDICTION BECAUSE BOEING AND ITS PREDECESSORS WERE ACTING UNDER FEDERAL OFFICERS

10.     The Federal Officer Removal statute allows removal of an action against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).  "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'"  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (citations omitted).  All three elements are satisfied here.

### A.     Boeing is a "Person" Under Section 1442

11.     Boeing is a "person" within the meaning of § 1442(a)(1).  The Complaint alleges that Boeing is a corporation, Manakides Decl. Ex. A (Complaint) ¶ 17, which the Ninth Circuit has held qualifies as a "person" under § 1442.  *See Goncalves*, 865 F.3d at 1244.

### B.     There Is a Causal Nexus Between Boeing and Boeing Predecessors' Actions Pursuant to a Federal Officer's Directions and Plaintiffs' Claims

12.     A causal nexus exists between Boeing and Boeing Predecessors' actions, taken pursuant to a federal officer's directions, and Plaintiffs' claims.  *Durham*, 445 F.3d at 1251.  Assuming the truth of Plaintiffs' allegations, their claims are causally related to actions that officers at NASA, DOE, and various branches of the military directed Boeing and Boeing Predecessors to perform.

13.     Since the 1940s, the Air Force, NASA, DOE, and other branches of the military contracted with Boeing and several Boeing Predecessors, including North American Aviation, Atomics International, Rocketdyne, and Rockwell International, to conduct research, development, and testing activities on the Site.

14.     **NASA and United States Military Direction of Boeing and its Predecessors' Activities:**  Under the supervision, direction and control of officers at

1  the Air Force, NASA and other branches of the military, Boeing and Boeing
2  Predecessors researched, developed, and tested rocket engines on the Site for many
3  different missiles and space vehicles.

4          15.     After World War II, Boeing Predecessor North American Aviation
5  received a contract from the United States military to develop the first American
6  guided missile system, and conducted testing for that system on the Site.  As the Cold
7  War progressed, North American Aviation, under contracts with the Army, the Navy,
8  and the Air Force, conducted tests at the Site for the rocket engines that powered many
9  of the principal ballistic missile systems that the United States deployed during the
10 Cold War.  The Rocketdyne Division of North American Aviation, acting as a federal
11 contractor on behalf of NASA, also used portions of the Site to test rocket engines for
12 the federal government for most major American space expeditions, including the
13 rockets that launched the first American into space, the Apollo missions to the moon,
14 the Space Shuttle, and the Atlas and Delta launch vehicles.  These government-
15 directed activities resulted in chemical contamination at the Site.

16         16.     The federal government's rocket engine testing on the Site continued for
17 more than 50 years, with the last testing occurring on the Site in 2006.

18         17.     Officers at NASA, Department of Defense, the Air Force and other
19 military branches controlled the details of the research and testing that Boeing and
20 Boeing Predecessors performed at the Site through on-site personnel and detailed
21 contract specifications.  As part of their oversight, these government officers directed
22 Boeing and its Predecessors to use certain chemicals on the Site that resulted in the
23 contamination of soil and groundwater at the Site.  For example, NASA and the
24 Department of Defense required a Boeing Predecessor to use a chemical called
25 trichloroethylene ("TCE") to clean and flush the rocket engines to eliminate the
26 potential for fire or explosion upon a subsequent test or missile launch.  A 1961
27 directive transmitted by United States Air Force Colonel William W. Snavely specified
28 that as part of the Ballistic Missile Program, for specified components, "the final

solvent rinse shall be performed with filtered trichloroethylene, or equivalent, using a measured amount of 200 milliliters of rinse fluid per square foot." Manakides Decl. Ex. B (United States Air Force specification AF/BSD Exhibit 61-3A) at 52). Officers from NASA, for example, had onsite offices and observed the operations of Boeing's Predecessors to ensure that they complied with these government specifications. *See* Manakides Decl. Ex. C (Contract No. NAS8-18741) at 68 (requiring North American Aviation to "furnish adequate office space . . . to representatives of NASA . . . who are engaged in technical direction and surveillance, inspection, or other work related to this contract").

18.    NASA also contracted with Boeing and Boeing Predecessors to remediate the contamination resulting from the decades of rocket engine testing on the Site. NASA officers oversaw, controlled, monitored, and supervised Boeing's remediation work in NASA's portions of the Site, communicating standards for the remediation efforts and conducting on-site inspections to ensure that Boeing remediated portions of the Site owned by the United States in accordance with NASA's specified standards. For example, NASA and Boeing entered into a 2008 agreement to "continue the investigation, monitoring and/or remediation" at the Site. Manakides Decl. Ex. D (Contract No. NNM08AA17C) at 205. In the agreement, NASA acknowledged that it had "accepted responsibility for cleanup of 15 groups . . . of environmentally contaminated sites and associated groundwater plumes" at the Santa Susana Site. *Id*. The agreement noted that the "primary contaminants that have been identified are TCE and its degradation products." *Id*. This agreement required Boeing to "proceed promptly with the performance of technical direction duly issued by the [Contracting Officer Technical Representative]." *Id*. at 182.

19.    **DOE Direction of Boeing and Boeing Predecessors' Activities**: During roughly the same time period that the rocket engine testing was being performed on the Site, at another area of the Site, Boeing Predecessors conducted research, development, and testing relating to nuclear energy for DOE and DOE's predecessors. *See*

Manakides Decl. Ex. E (Contract No. AT-11-1-Gen-8).  The Boeing Predecessors'
work on behalf of DOE included the operation of eight different DOE-owned nuclear
reactor facilities and various nuclear-fuel storage and inspection activities.

20.     DOE owned many buildings and other federal facilities that were built in
support of its nuclear and other energy research at the Site.  Those DOE structures,
which at the peak of DOE's research activities numbered more than 200 on the Site,
comprised what was known as the Energy Technology Engineering Center ("ETEC").
Those federal facilities included nuclear reactors of various sizes, ranging from
compact models intended to power small spacecraft in orbit to larger research reactors,
and critical test facilities used for conducting research in support of those reactors.
One of those DOE reactors, the Sodium Reactor Experiment, was the first civilian
nuclear reactor in America to produce electricity that was supplied to the commercial
grid.

21.     Given the nature of this work, DOE exercised a high degree of control and
supervision over Boeing Predecessors' activities on the Site.  Specifically, DOE
officers and contracts required Boeing Predecessors to use nuclear, radioactive, and
other chemicals on the Site, and closely supervised, controlled, and monitored those
materials' use on the Site.  *See* Manakides Decl. Ex. F (Contract No. AT-11-1-GEN-8,
Mod. 2).

22.     For example, in 1969, a modification to a contract between DOE and
Boeing's Predecessor, North American Aviation, stated:

> The Contractor shall, in accordance with the terms and conditions of this
> contract, manage, operate, and maintain the [Liquid Metal Engineering
> Center[3]] and perform the following research, construction, reporting,
> program development, and related services ***in accordance with the
> direction and instructions of the Contracting Officer***: . . .

---

[3]  The Liquid Metal Engineering Center was later renamed the ETEC.

Gibson, Dunn &
Crutcher LLP

1    Proof testing of materials and components developed or proposed for use

2    in liquid metal cooled reactor systems . . . .

3    Application of appropriate codes, standards, procedures, and quality

4    assurance programs in carrying out the work under the contract. . . .

5  Manakides Decl. Ex. G (Contract No. AT(04-3)-700, Mod. 3) at 454–455.  DOE's

6  nuclear activities on the Site ended in 1988.

7        23.    DOE also entered into contracts with Boeing and its Predecessors in

8  which DOE paid Boeing and its Predecessors to remediate contaminants on the

9  property under DOE's supervision and direction.  As the Ninth Circuit held in 2014,

10  "[a]s a cleanup contractor, Boeing [wa]s actively cleaning up the Santa Susana site on

11  behalf of DOE. . . .   The federal government *set[] the standard for the entire cleanup*

12  *of radioactive materials . . . and direct[ed] Boeing's conduct*."  *Boeing Co. v.*

13  *Movassaghi*, 768 F.3d 832, 836 (9th Cir. 2014) (emphasis added).

14        24.    As one example, a 1998 contract between DOE and Boeing for Site

15  remediation provided: "*Under the guidance and technical direction of the*

16  *Contracting Officer and/or the Contracting Officer's Technical Representative*, the

17  Contractor [i.e., Boeing] shall remove all hazardous and/or radioactive material and

18  wastes resulting from DOE activities and shall remediate soil and groundwater at the

19  Site."  Manakides Decl. Ex. H (Contract No. DE-AC03-99SF21530) at 598.  This

20  contract established the standards and methods of remediation, and established a

21  specific schedule of "completion milestones" that listed the dates by which Boeing was

22  to have removed specified quantities of various contaminants.  *See id.*  DOE officers

23  closely controlled, supervised, and monitored Boeing's work on the Site to ensure that

24  it complied with DOE's requirements.

25        25.    In addition, as a DOE prime contractor for remediation of the Site until

26  late 2014, Boeing was legally obligated and contractually directed to comply with all

27  DOE health, safety, and cleanup requirements set forth in DOE orders incorporated

28  into the contract.  *See, e.g.*, DOE Order 5400.5, *Radiation Protection of the Public and*

Gibson, Dunn &
Crutcher LLP

*the Environment* (DOE 1990); DOE Order 435.1, *Radioactive Waste Management* (DOE 1999); DOE Order 231.1A, *Environment, Safety and Health Reporting*; DOE Order 450.1A, *Environmental Protection Program*; DOE Policy 450.4, *Safety Management System Policy*; DOE Order 450.4-1A, *Integrated Safety Management System Guidance*; DOE Order 414.1A, *Quality Assurance*; DOE Order 5480.19, *Conduct of Operations Requirements for DOE Facilities*; DOE Order 440.1A, *Worker Protection Management for DOE Federal and Contractor Employees*; DOE Order 226.1, *Implementation of DOE Oversight Policy*; DOE Order 205.1, *DOE CYBER Security Management Program*; DOE Order 460.1A, *Packaging and Transportation Safety*; DOE Order 451.1A, *National Environmental Policy Act Compliance Program*; DOE Order 5400.1, Chg. 1, *General Environmental Protection Program*.[4]  In addition, DOE had complete oversight and control over virtually all aspects of the ETEC site closure activities, including cleanup.  *See* DOE Order 5400.5.  Boeing had little discretion in how it complied with and implemented DOE's cleanup policies and orders.

26.     As part of the Site remediation contract, DOE required Boeing to "Prepare and submit an ETEC Emergency Response Plan for work to be conducted under this contract."  Manakides Decl. Ex. I (Contract No. DE-AC03-99SF21530, Mod. 108) at 679.  The contract specified that the "Emergency Response Plan" required "DOE Action" granting "Approval" for the plan.  *Id.* at 745.

27.     Boeing submitted its Emergency Response Plan to DOE officials for approval on October 27, 2008.  Manakides Decl. Ex. J (Emergency Readiness Assurance Plan).  It was prepared and submitted "to comply with Department of Energy contract DE-AC03-99SF21530."  *Id.* at 790.  Among other things, the Emergency Response Plan set forth the fire protection plan to be implemented at the Site, *id.* at 794, which required fire drills and maintenance of a "fire department at the

---

[4]  Copies of these and other DOE Orders are available at DOE's website, https://www.directives.doe.gov/.

SSFL location," *id*. at 795.  The Emergency Response Plan informed DOE of potential hazards associated with brush fires on the Site "under firestorm conditions."  *Id*. Boeing informed DOE that Boeing lacked "helicopters for fighting brush fires," and would instead rely on local fire departments' resources in the event of a brush fire.  *Id*.

28.  **Causal Nexus Between Government-Directed Actions and Claims**: Assuming the truth of Plaintiffs' allegations, their claims are causally related to actions that Boeing and its Predecessors performed under the direction, supervision, control, and monitoring of federal officers at DOE, NASA, the Air Force, and other military agencies.  *See Goncalves*, 865 F.3d at 1244–1245 (noting that the causal nexus requirement is "quite low" and that the defendant "need show only that the challenged acts occurred because of what they were asked to do by the Government") (quotations omitted).

29.  Plaintiffs' allegations of harm from "toxic contamination," Manakides Decl. Ex. A (Complaint) ¶¶ 59, 68, and Boeing's alleged "fail[ure] to clean up the SSFL to the appropriate standard," *id*. ¶ 73, assuming they are true, are causally related to actions federal officers directed Boeing and Boeing Predecessors to perform. Boeing and Boeing Predecessors' activities involving the selection, use, management, investigation and remediation of chemicals, toxins, and nuclear materials on the Site were performed at the direction and under the close supervision and monitoring of federal officers, including from the Air Force, NASA and DOE.  In addition, Boeing's "clean-up" of the Site on behalf of the United States, specifically DOE and NASA— which Plaintiffs claim was not performed "to the appropriate standard," *id*. ¶ 73—was performed for NASA and DOE, in accordance with federal standards and under the supervision, control, and direction of NASA and DOE officers.

30.  Similarly, Plaintiffs challenge Boeing's Emergency Readiness Assurance Plan for the Site, *id*. ¶ 70–71, which was prepared for and approved by DOE officers. Plaintiffs also claim that Boeing violated its assurances to "the United States government, and the public and authorities present in the areas surrounding the SSFL,

that the SSFL was 'maintained at a level commensurate with the hazards' of that facility." *Id*. ¶ 71.  While Boeing disputes that the Emergency Readiness Assurance Plan is applicable to the facts alleged in the Complaint, these allegations have a causal nexus to the activities Boeing and Boeing Predecessors performed at the Site under the supervision, control and direction of DOE, NASA, and military officers.

## C.     Boeing Has Colorable Affirmative Defenses to Plaintiffs' Claims

31.     Boeing intends to raise a number of federal defenses that this Court has jurisdiction to adjudicate under § 1442.  *See Goncalves*, 865 F.3d at 1249.

32.     First, Boeing has a colorable government contractor defense to Plaintiffs' claims.  *See Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988).  Plaintiffs challenge actions that Boeing and Boeing Predecessors undertook for the federal government and in compliance with the government's specifications.  Such actions include: testing and developing rocket engines for missiles and spacecraft, constructing and operating nuclear reactors, performing other energy research and testing activities, and remediating the Site following the completion of these activities.  To the extent Boeing or its predecessors were aware of hazards associated with these activities that were unknown to the government, Boeing or its predecessors warned the government of such hazards.  Boeing therefore has a colorable argument that Plaintiffs' claims challenging these actions fail to overcome the government contractor defense.  *See Getz v. Boeing Co.*, 654 F.3d 852, 861 (9th Cir. 2011); *see also In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008) ("[A] contractor who agrees to operate a production facility pursuant to government specifications may qualify for the [government contractor] defense").

33.     Second, Boeing has a colorable defense that federal law preempts Plaintiffs' claims alleging 1) environmental contamination and 2) duties to reduce the risk of fires on the Site.  For example, Plaintiffs claim the "SSFL is contaminated with tons of radioactive and toxic chemical waste" and that Boeing "fail[ed] to clean up the SSFL to the appropriate standard prior to the Woolsey fire," and "allow[ed] the

Woolsey Fire to ignite on their property, sending toxins into the air."  Manakides Decl. Ex. A (Complaint) ¶¶ 66, 73, 72; *id*. ¶ 68 (alleging Boeing attempted "to reduce the level of clean-up to a much weaker standard" which "will leave some of these toxicants in place, risking people's health long into the future").  However, "[t]he safety of nuclear technology is the exclusive business of the Federal Government, which has occupied the entire field of nuclear safety concerns." *Hanford*, 534 F.3d at 1003 (quotations and alterations omitted).  Thus, "federal law preempts states from imposing a more stringent standard of care than federal safety standards." *Id*.  "To allow a jury to decide on the basis of a state's reasonableness standard of care would put juries in charge of deciding the permissible levels of radiation exposure and, more generally, the adequacy of safety procedures at nuclear plants—issues that have explicitly been reserved to the federal government." *Id*. (quotations omitted). Similarly, Plaintiffs' request for the Court to impose a different cleanup standard with respect to radiation contamination by way of their request for an injunction is also preempted. *See* Manakides Decl. Ex. A (Complaint) at 39.  Plaintiffs' allegations relating to other purported contaminants that they have not specifically identified in their Complaint may also be preempted to the extent such contaminants are governed by federal standards.  In addition, Plaintiffs' claims may be preempted to the extent they seek to impose duties to prevent or suppress fires that are inconsistent with federal law and/or Boeing's contractual obligations to DOE and/or NASA.  For example, the Site contains sensitive ecological habitat, which includes at least 15 species of plants and animals that are federally listed (or potentially listed) as endangered or threatened (such as Braunton's Milk-vetch and California Orcutt grass). *See* Manakides Decl. Ex. K (DOE Biological Assessment Reference Document) at 812.  Plaintiffs' claims may be preempted to the extent they seek to impose duties on Boeing that would conflict with Boeing's duties related to these protected species under applicable federal law.

34.     Third, Boeing has a colorable defense that the Defense Production Act ("DPA") bars Plaintiffs' claims against Boeing. *See* 50 U.S.C. § 4557 ("No person

shall be held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this chapter . . . .").  Some, if not all, of the contracts for the government rocket engine programs were "rated" contracts (also known as an "order") entered into pursuant the DPA.  *See* Manakides Decl. Ex. C (Contract No. NAS8-18741).  Plaintiffs' claims are therefore barred by the DPA.

35.     Finally, Boeing has a colorable defense under the doctrine of derivative sovereign immunity.  The Supreme Court has determined that a contractor who performs activities under the validly conferred authority and direction of the United States government cannot be held liable for property damages arising out of those activities.  *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940).  Here, the government validly conferred its authority to Boeing and its Predecessors to conduct rocket engine and nuclear energy research and development, as well as Site remediation.  In addition, Boeing and its Predecessors were acting within the authority they were granted as an agent of the United States when they performed testing, research, and remediation activities at the Site under the government's direction and to the government's specifications.  Boeing therefore has a colorable federal defense under the doctrine of derivative sovereign immunity.

## V.     REMOVAL IS PROPER UNDER 42 U.S.C. § 2210(n)(2)

36.     Section 2210(n)(2) provides jurisdiction for "any public liability action arising out of or resulting from a nuclear incident" in the United States district court where the alleged nuclear incident takes place.  42 U.S.C. § 2210(n)(2).  A "public liability action" is an action in which "any legal liability arising out of or resulting from a nuclear incident" is alleged, except for certain actions which are not relevant here.  42 U.S.C. § 2014(w).  A "nuclear incident" is "any occurrence . . . within the United States causing, within or outside of the United States, bodily injury, sickness, disease or death, or loss of or damage to property, or loss of use of property, arising

Gibson, Dunn & Crutcher LLP

out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . . ."  42 U.S.C. § 2014(q).

37.     Here, Plaintiffs allege harm from radioactive material.  *See* Manakides Decl. Ex. A (Complaint) ¶ 66 ("The SSFL is contaminated with tons of radioactive and toxic chemical waste, created by decades of nuclear accidents and rocket testing"); *id*. ¶ 68 (alleging Boeing attempted "to reduce the level of clean-up to a much weaker standard" which "will leave some of these toxicants in place, risking people's health long into the future"); *id*. ¶ 72 (alleging that "[b]y allowing the Woolsey Fire to ignite on their property, sending toxins into the air, and/or further failing to take adequate steps to contain . . . the Woolsey Fire" Boeing caused "substantial losses and injuries to Plaintiffs."); *id*. ¶ 100 (claiming Plaintiffs "have suffered and/or continue to suffer personal injury, including fire-related, smoke-related, and/or particulate-related injuries"); *id*. ¶ 126 (claiming a "rational fear that the area is still dangerous due to toxic contamination").

38.     Based on these allegations, Plaintiffs have alleged a "public liability action" under the Price-Anderson Act, which is subject to removal under 42 U.S.C. § 2210(n)(2).

## VI.   BOEING HAS SATISFIED ALL STATUTORY REQUIREMENTS FOR REMOVAL

39.     The other defendants to this action—Southern California Edison and Edison International—have not been served in this action, and their consent to removal is therefore not required.  Manakides Decl. ¶ 2; *see also Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011) ("Because none of the non-joining defendants was properly served, their absence from the removal notice did not render the removal defective."). Moreover, "§ 1442 represents an exception to the general rule (under §§ 1441 and 1446) that all defendants must join in the removal petition," thus removal is allowed "without other defendants joining in the petition, and the entire case is removed to the

federal court." *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981).

40.    Boeing has not been served with any process, pleadings, or orders in this case, including the Complaint. *C.f.* 28 U.S.C. § 1446(a).

41.    Upon filing this Notice of Removal, Boeing will furnish written notice to Plaintiffs' counsel, and will file and serve a copy of this Notice with the Clerk of the Superior Court of California for the County of Los Angeles, pursuant to 28 U.S.C. § 1446(d).

Dated:  November 26, 2019

                          GIBSON, DUNN & CRUTCHER LLP


                   By: */s/ Theodore J. Boutrous Jr.*
                          Theodore J. Boutrous Jr.
                          Peter S. Modlin
                          Peter E. Seley
                          Thomas A. Manakides
                          Abbey Hudson
                          Joseph D. Edmonds

                   Attorneys for Defendant THE BOEING COMPANY (erroneously sued as "BOEING COMPANY")

Gibson, Dunn &
Crutcher LLP